# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARTIN RODRIGUEZ, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 12 C 7838 |
| JANET NAPOLITANO, Secretary, United States Department of Homeland Security, Transportation Security Administration, | ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Martin Rodriguez worked for the Transportation Security Administration ("TSA") in various capacities from 2002 until he was fired for a positive drug test in 2012. Rodriguez appealed that decision to the Merit Systems Protection Board ("MSPB"), based on claims of procedural irregularities with the test, and later settled that appeal with TSA. Before reaching that settlement, however, Plaintiff, a Hispanic male, filed this suit against his former employer, claiming that during his time at TSA he was subjected to racial discrimination, a hostile work environment, and retaliatory treatment for his complaints about that environment. Plaintiff seeks to recover under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII"). TSA moved to dismiss, arguing that Plaintiff (1) failed to bring these claims, as required, in his earlier MSPB review; and (2) otherwise failed to exhaust his administrative remedies. For the reasons explained below, Defendant's motion to dismiss [22] is granted in part and denied in part.

## FACTUAL BACKGROUND

### I.   Rodriguez's TSA Career

Plaintiff Rodriguez was hired as a Transportation Security Screener by Defendant TSA, an administrative agency of the Department of Homeland Security ("DHS"), in 2002. (Pl.'s First Am. Compl [21], hereinafter "Am. Compl.," ¶ 15.) After seven years with TSA, Rodriguez was

promoted to a managerial position (I-Band Transportation Security Manager), which he held until he was fired on March 21, 2012 for a positive drug test. (*Id.* ¶¶ 17, 31.) Throughout his tenure with TSA, Plaintiff worked at Chicago's O'Hare International Airport. (*Id.* ¶ 18.)

Rodriguez alleges that in his final years at TSA, he was subjected to numerous instances of mistreatment at the hands of his Caucasian boss, Arthur Bell ("Bell"), the Assistant Federal Security Director ("AFSD") for Screening at O'Hare. (*Id.* ¶ 19.) Plaintiff cites three specific examples of demeaning, aggressive conduct by his boss: (1) in August 2009, Bell yelled profanities at Rodriguez in the presence of TSA Supervisor Marlene Brunson and passengers traveling through the airport (*id.* ¶ 20); (2) on November 2, 2011, Bell punched his office door during a disagreement with Plaintiff about how to punish another Hispanic employee (*id.* ¶ 21); and (3) Bell again screamed obscenities at Plaintiff and two other Hispanic employees—Ruben Chacon and Ruben Tellado—when Bell spotted Chacon holding a beverage in his hand while on the job.[1] (*Id.* ¶ 22.) Rodriguez further alleges that these outbursts and other instances of maltreatment were racially motivated. In addition to the examples of verbal aggression directed towards Hispanics described above, Rodriguez also claims that his boss discriminated against Hispanic TSA employees by singling them out for harsher discipline. For example, Bell demanded a more stringent punishment for Tellado based on the incident above[2] than non-Hispanic employees had received for similar, or worse, behavior. (*Id.*)

Plaintiff responded to Bell's behavior by repeatedly complaining to management. Following the August 2009 incident, Plaintiff reported Bell's behavior to Bill Kane, another of his supervisors.[3] (*Id.* ¶ 20.) Plaintiff also complained "numerous times" to Edith Bianchi, including

---

[1] The complaint does not specify when this third incident took place.

[2] The court is uncertain why Tellado's conduct (standing nearby while Chacon held a beverage) merited any discipline.

[3] The complaint does not identify Kane's job title, nor does it explain when Rodriguez complained to him about Bell.

2

"after each discriminatory incident" through February 2012.  (*Id.* ¶¶ 5, 24.)  Although neither party identifies Bianchi's true title or role in management, Rodriguez claims that he was "[led] to believe [that she] was the Equal Employment Opportunity officer" to whom he "was told to direct his EEO complaints." (*Id.*)  It is undisputed that Bianchi was not, in fact, the local TSA EEO officer.  At some point prior to May 26, 2012, however, Plaintiff did discover the identity of the actual EEO counselor, because he was able to file a formal complaint with that (unidentified) individual on that date (discussed below). (*Id.* ¶ 4.)

## II. Drug Testing and Termination

As Plaintiff sees things, his complaints to management resulted in Bell's "singling [Plaintiff] out for unwarranted discipline." (*Id.* ¶ 25.)  The only such discipline that Rodriguez cites is the handling of two drug tests that Plaintiff was subjected to: one in late 2011 and another in early 2012.  On December 19, 2011, Plaintiff was randomly tested for illegal drugs by TSA, and the test resulted in a "negative dilute," meaning that it was inconclusive due to Plaintiff's having imbibed an abnormal amount of liquid before providing his urine sample. (Letter from Hattimer to Lendvay of 03/06/12, Ex. 2 to Def.'s Mem., at 12.)  Plaintiff alleges that, in the case of a negative dilute, standard TSA operating procedure "requires immediate recollection under direct supervision"; yet Rodriguez was not informed of the result, nor was he tested again until February 1, 2012, almost six weeks later.  (Am. Compl. ¶ 26.)  The results of this re-test showed that marijuana metabolites (e.g., THC) were present in Plaintiff's urine.[4] (*Id.*) Plaintiff maintains that the second test was a false positive caused by medication he was taking at the time to treat Methicillin-resistant Staphylococcus aureus ("MRSA") boils.  (Letter from Hattimer to Lendvay of 03/06/12, Ex. 2 to Def.'s Mem., at 12.)   Plaintiff also claims that the administration of his re-test was plagued with irregularities: other TSA workers were present in the testing area, the collector worked at a work station out of Plaintiff's sight, and the collector

---

[4] Plaintiff has not say when he learned the results of his drug re-test.

3

made politically charged comments about Rodriguez's having voted for President Obama. (*Id.*) Plaintiff raised these concerns with Bell as well as Tresa Johnson and Marva Morris from TSA's Drug and Alcohol Free Work Place ("DAFWP") office[5]; but neither Bell nor the DAFWP officers took any action in response. (Am. Compl. ¶ 26.) To prove his innocence, Plaintiff subjected himself to private drug tests on February 17 (both hair and urine); these tests found no THC in Rodriguez's system. (*Id.*) Despite the results of the private tests, Bell issued a "proposal" for Plaintiff's removal from government employment on February 21, 2012. (*Id.* ¶ 31.) Plaintiff attempted to negotiate a lesser penalty, but to no avail; his termination became effective on March 21, 2012. (*Id.*) At the time of his termination, Rodriguez had worked for TSA for nearly ten years without any prior disciplinary actions. (Letter from Hattimer to Lendvay of 03/06/12, Ex. 2 to Def.'s Mem., at 12.)

### III. Administrative Proceedings and This Lawsuit

Through counsel, Rodriguez filed a timely appeal of his termination with the MSPB on May 2, 2012, citing TSA's failure to adhere to its own policies in administering his drug test. (Pl.'s MSPB Appeal Form, Ex. 2 to Def.'s Mem., at 4, 6, 8.) Although Plaintiff's appeal was based only on the alleged procedural infirmities of his drug test, he did seek relief in the form of, among other things, "a lump sum settlement for all potential discrimination and hostile work environment claims against TSA." (*Id.* at 7.) Other than this single reference, however, Rodriguez's MSPB appeal form is completely silent regarding his Title VII allegations, and focuses instead on procedural issues with the drug test itself. On February 8, 2013, Rodriguez and TSA reached a settlement in his MSPB appeal. (MSPB Settlement Agreement & Release, Ex. 4 to Def.'s Mem., hereinafter "MSPB Settlement," at 2.) As part of the settlement, TSA agreed to rescind Rodriguez's removal action, meaning that his personnel records would reflect

---

[5] Plaintiff does not say when or how he registered his concerns with these individuals.

that he had resigned voluntarily for personal reasons, and received a lump sum of $6,500. (*Id.* at 4, 5.) In exchange, Rodriguez withdrew his appeal. The agreement required that "[Rodriguez] waive[] his right to pursue . . . [a] judicial action in any forum . . . concerning matters relating to his removal action, which is the subject of his MSPB appeal, and any other matters that could have been alleged through the Agreement Effective Date, under the Civil Rights Act . . . ." (*Id.* at 2.) Yet, the agreement goes on to clarify that this waiver of Rodriguez's right to sue the government over his removal "is not intended to waive Appellant's right to pursue the other allegations of discrimination in his current lawsuit in federal district court . . . ."[6] (*Id.*)

During the pendency of his MSPB appeal, on May 21, 2012, Rodriguez filed a complaint with the TSA's Office for Civil Rights and Civil Liberties ("CRCL"), the agency's equal opportunity office ("EEO").[7] Plaintiff's CRCL complaint cites ten separate incidents of alleged racial discrimination and hostile work environment, dating back as far as 2009; the most recent were (1) the receipt of Bell's proposed removal letter (February 21, 2012), and (2) Plaintiff's termination (March 21, 2012). (CRCL Dismissal, Ex. 3 to Def.'s Mem., at 2.) In support of his discrimination claim, Rodriguez alleged that, prior to his drug test, Bell allowed one of his deputies (i.e., a Deputy AFSD), an African American, to avoid a scheduled drug test in violation of TSA policies. (Pl.'s CRCL Compl., Ex. 2 to Def.'s Reply [28], at 10–11.) Bell recognized the impropriety of his actions, Rodriguez asserts; he told Rodriguez that he would help the African American deputy avoid the drug test because he would rather violate TSA policy than lose an

---

[6] As explained below, Plaintiff filed suit in this court prior to the resolution of his MSPB appeal.

[7] Filing a complaint with the an agency's EEO office or an appeal with the MSPB are two ways an aggrieved federal employee may exhaust her administrative remedies, as required, prior to suing in federal court (discussed below). 29 C.F.R. § 1614.302(b). For purposes of exhaustion, a federal employee's complaint with the EEO office of the agency that allegedly engaged in the discriminatory conduct is analogous to a private employee's complaint with the EEOC. *See Kloeckner v. Solis,* 133 S. Ct. 596, 601 (2012).

employee as a result of a positive drug test. (Am. Compl. ¶ 28.) Looking back at the incident in light of his situation, Rodriguez argued in his CRCL complaint that "[i]f I were non Hispanic and 1 of his [deputies,] Art Bell would have looked into my . . . concerns and ensured that the TSA policy was followed." (CRCL Dismissal at 11.)

The CRCL procedurally dismissed Rodriguez's complaint on September 6, 2012. Specifically, Plaintiff's claim regarding his termination on March 21, 2012 was dismissed on the ground that he had already raised the same claim before the MSPB. (EEOC Dismissal, Ex. 3 to Def.'s Mem. in Supp. of Mot. to Dismiss, at 4.) In dismissing Plaintiff's remaining claims—including allegations of verbal abuse, receiving a "less than favorable" performance rating, and being subjected to a follow-up drug test in violation of TSA drug policy—the CRCL found that Rodriguez had failed to contact his EEO officer within 45 days of any discriminatory action, as required by 29 C.F.R. § 1614.107(a)(2). (*Id.*)

On October 6, 2012, while still awaiting the resolution of his MSPB appeal, Rodriguez filed this lawsuit, raising Title VII discrimination, hostile work environment, and retaliation claims. (Original Compl. [1].) Plaintiff amended his complaint on February 21, 2013 to disclose the fact that he and TSA had reached a settlement in his MSPB appeal earlier that month. (Am. Compl.) Rodriguez's discrimination and hostile work environment claims mirror his claims before the CRCL. With respect to his retaliation claim, which he had not raised previously, Rodriguez alleges that, because of his complaints and disagreements with Bell about employee discipline, "Bell began singling him out for unwarranted discipline." (*Id.* ¶ 25.) The only allegation of "unwarranted discipline" Rodriguez alleges here is the "delayed" re-test in February 2012. (*Id.* ¶ 26.) On March 25, 2013, Defendant filed a motion to dismiss [22], arguing that Plaintiff (1) failed to bring these claims, as required, in his earlier MSPB review; and (2) failed to otherwise exhaust his administrative remedies.

## DISCUSSION

**I.  Standard of Review**

Defendant moves to dismiss Plaintiff's complaint under FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim based on, among other things, the theory that Plaintiff has failed to exhaust his administrative remedies and contractually waived his right to bring these claims.  (Def.'s Mem. at 3.)  As a general matter, however, the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement.  *Gibson v. West*, 201 F.3d 990, 994 (7th Cir. 2000).  Furthermore, TSA's arguments may be better suited to a Rule 12(c) motion for judgment on the pleadings, as they rely on affirmative defenses.  The Seventh Circuit has repeatedly cautioned that courts should refrain from granting 12(b)(6) motions on affirmative defenses, because Rule 12(b)(6) tests whether the complaint states a claim for relief, and a plaintiff may state a claim even though there is a defense to that claim.  *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (citing *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)).  Not only does the presence of a potential affirmative defense not render the claim for relief invalid, but these defenses usually turn on facts not before the court at this stage.  In situations like this one, however, when all relevant facts are presented[8] and uncontested, the court may properly dismiss a case before discovery—typically on a 12(c) motion—on the basis of an affirmative defense.  *See Brooks v. Ross*, 578 F.3d 574, 579 (7th

---

[8]  At the dismissal stage, the court is typically confined to the pleadings alone, but "[i]t is . . . well-settled in this circuit that 'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'"  *Yassan v. J. P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013) (quoting *LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)).  Several documents from the administrative record in this case are central to Rodriguez's claim: his MSPB Appeal Form, the MSPB Settlement Agreement, his CRCL complaint, and the CRCL Dismissal.  Although these documents are not attached to the complaint, the proceedings they memorialize are referenced repeatedly by Rodriguez and they establish the core of his claims here.  For these reasons, the documents from Plaintiff's administrative proceedings, which are attached to Defendant's memoranda, are appropriate for the court to consider at this time.

Cir. 2009) (affirming dismissal on motion of a case as time-barred when "the relevant dates [that establish the statute of limitation defense] are set forth unambiguously in the complaint."). Here, not only are all pertinent facts before the court, but Plaintiff has responded to TSA's motion on its merits (rather than attacking it procedurally). Accordingly, the court will treat Defendant's motion as one under Rule 12(c). In practice, this distinction has little impact on the court's analysis, however, as 12(c) motions are subject to the same 12(b) standard. *See McCready v. eBay, Inc.*, 453 F.3d 882, 891-2 (7th Cir. 2006).

## II.    Rodriguez's Title VII Claims

Plaintiff accuses TSA of three separate Title VII violations in his first amended complaint: racial discrimination, hostile work environment, and retaliation. Prior to pursuing Title VII claims in federal court, federal employees must exhaust their administrative remedies. *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013) (citing *Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003)). Rodriguez elected to do so by pursuing both (1) an appeal of his termination before the MSPB, and (2) a complaint of employment discrimination before TSA's EEO office, the CRCL.

The MSPB has jurisdiction to review certain adverse personnel decisions including a termination, suspension, grade reduction, or furlough. 5 U.S.C. § 7512. If the employee believes discriminatory animus is involved in the challenged personnel action, the MSPB has the power to resolve such "mixed cases," as well. *See* 5 U.S.C. § 7702; *Kloeckner v. Solis*, 133 S. Ct. 596, 600-01 (2012). A federal employee bringing a mixed case also has another option: rather than taking her claims to the MSPB, she may alternatively file a discrimination complaint with the agency's EEO office, much like an employee challenging a personnel practice not appealable to the MSPB could do. *See* 5 C.F.R. § 1201.154(a); 29 C.F.R. § 1614.302(b). If the agency's EEO office decides against her, the employee may then either take the matter to the MSPB or bypass further administrative review by suing the agency in district court. *See* 5 C.F.R. § 1201.154(b); 29 C.F.R. § 1614.302(d)(1)(i). If the MSPB upholds the personnel action

(either in the first instance or after the agency has done so), the employee faces another choice: she may request additional administrative process with the EEOC, or else she may seek judicial review. *See* 5 U.S.C. §§ 7702(a)(3), (b); 5 C.F.R. § 1201.161; 29 C.F.R. § 1614.303.

The one option not open to a federal employee bringing mixed case is filing those claims concurrently with both the MSPB and the agency's EEO office. 29 C.F.R. § 1614.302(b). If, however, the employee has discrimination claims that are not related to her MSPB appeal, she is free to bring her claims in separate proceedings. *See McAdams v. Reno*, 64 F.3d 1137, 1143 (8th Cir. 1985). In those instances where an employee files the same claims before both the EEO and the MSPB, the first-filed complaint controls. 29 C.F.R. § 1614.105(a)(1).

### A.  Racial Discrimination & Hostile Work Environment Claims

Defendant argues that Plaintiff's racial discrimination and hostile work environment claims should be dismissed for two reasons: (1) Rodriguez's allegations present a mixed case, TSA argues, and by failing to raise his discrimination claims in his MSPB appeal, which he filed prior to his CRCL complaint, Plaintiff waived those claims; and (2) even if this is not a mixed case, Plaintiff failed to exhaust his administrative remedies by not contacting his EEO counselor within 45 days of the allegedly discriminatory conduct, as required by applicable regulations. (Def.'s Mem. at 3-4, 7.) Plaintiff does not dispute his failure to raise his discrimination allegations in his MSPB appeal; rather, he argues that his is not a mixed case and the claims here are distinct from those in the MSPB proceeding. (Pl.'s Resp. at 3-5, 6-9.) Further, Rodriguez argues that his delay in contacting the EEO counselor should be excused, because TSA misled him as to the identity of the EEO counselor. (*Id.* at 5-6.)

The court will first address each of these issues in turn.

#### 1.  Mixed Case

##### a.  Racial Discrimination

Plaintiff claims that his failed drug test was unfairly used against him on account of his race in violation of Title VII. (Am. Compl. ¶ 11.) Despite the apparent connection between this

discrimination claim and his MSPB appeal, Rodriguez argues that the claims are, in fact, distinct because the latter focused on the *administration* of the drug test, while the former is focused only on "the discriminatory *use* of the negligently collected drug tests." (*Id.* (emphasis added).) But this is a distinction without a meaningful difference. The act of using the test results to justify Plaintiff's firing may well be distinct from the act of administering the test itself, but there can be no question that the two acts are related. Thus, when he appealed his termination to the MSPB, Plaintiff was required to bring with that appeal his race discrimination claim that itself relies on the same employment action (i.e., his termination for a positive drug test). Based on his failure to do so, the CRCL dismissed his claim as it related to his termination. (CRCL dismissal at 3 (citing 29 C.F.R. § 1614.107(a)(4) (requiring agency EEO offices to dismiss any complaint where "the complainant has raised the matter in . . . an appeal to the [MSPB]")).) Accordingly, Plaintiff's allegation that his termination was the result of racial discrimination was never properly before the CRCL and, therefore, his administrative remedies related to this claim were not exhausted in that proceeding. *See Reynolds*, 737 F.3d at 1099.

Furthermore, because Rodriguez's race discrimination claim should have been brought before the MSPB, his settlement agreement with TSA explicitly waived his right to pursue that claim in this court. The parties agreed, as part of their MSPB settlement, that "[Rodriguez] waives his right to pursue [a] . . . judicial action . . . concerning matters relating to his removal . . . and any other matters that could have been alleged . . . under the Civil Rights Act . . . or any other law." (MSPB Settlement Agreement & Release at 2.) As discussed above, Plaintiff's race discrimination claim is a matter that both is "relat[ed] to his removal action" and "could have been alleged" in his MSPB appeal; therefore, it falls squarely within the bounds of the waiver provision of the parties' settlement.

Challenging this result, Plaintiff cites the language of the settlement agreement he signed, which explicitly preserved "[Rodriguez's] right to pursue the other allegations of discrimination in his current lawsuit in federal district court." (MSPB Settlement Agreement &

Release at 2.) But that language is consistent with the court's analysis here. Notably, the passage that Plaintiff cites immediately follows the section (quoted in the previous paragraph) that requires him to waive his right to pursue judicially any matters "relating to his removal." (*Id.*) In other words, the settlement agreement divided the universe of Rodriguez's possible claims in this case into two categories: (1) those claims that are related to his termination; and (2) all other possible claims. By the terms of the agreement, Plaintiff waived his right to pursue any claim in the first category, but is free to bring any claim from the second. As discussed earlier, Rodriguez's race discrimination claim falls into the first category, and therefore it must be dismissed.

### b. Hostile Work Environment

Plaintiff's hostile work environment claim is a different story, however, as it does not involve his termination. Rather, Rodriguez's hostile work environment is based on (1) several instances of Bell's screaming at Rodriguez and other Hispanic TSA employees in front of other employees and the general public; and (2) the claim that Hispanics were subjected to disproportionate discipline as compared to their non-Hispanic peers. These allegations are wholly unrelated to (and actually predate) Plaintiff's initial random drug test in December 2011. As such, this hostile work environment claim does not fall within the jurisdiction of the MSPB and could not have been raised in Plaintiff's appeal before the Board. Plaintiff therefore properly brought this claim before the CRCL rather than the MSPB.

Defendant does not suggest that Rodriguez's allegations are insufficient to support a hostile work environment claim.[9] Instead, TSA argues that Rodriguez's MSPB appeal was nonetheless related to his hostile work environment claims because, when asked what remedy

---

[9] As the issue is uncontested, the court assumes that Plaintiff's allegations do support a hostile work environment claim, which requires him to prove (1) that he was subjected to unwelcome harassment; (2) that the harassment was based on his membership in a protected class; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability. *Dear v. Shinseki*, 578 F.3d 605, 611 (7th Cir. 2009).

he sought in that appeal, Plaintiff asked for "lump sum settlement for all potential discrimination and hostile work environment claims against TSA." (Pl.'s MSPB Appeal Form at 7.) This alone, however, does not render Rodriguez's claims related to his appeal. Although Plaintiff sought to settle all the claims he had against TSA, his unrelated hostile work environment claim was outside the jurisdiction of the MSPB and could not have been adjudicated in that forum. Further, as discussed above, the parties' own settlement agreement in that matter explicitly states that the resolution of that appeal did not waive Rodriguez's rights to pursue allegations unrelated to his termination. (MSPB Settlement Agreement & Release at 4.)

### 2. 45-Day Requirement

That Plaintiff's hostile work environment claim could not have been raised in his MSPB appeal does not conclude the court's analysis, however. Rodriguez was still required to exhaust his administrative remedies by properly raising his claim before his agency's EEO office prior to filing suit in federal court. *Reynolds,* 737 F.3d at 1099 (citing *Hill*, 352 F.3d at 1145). "Exhaust" in this context means that the claimant must comply with the relevant preconditions to bringing a lawsuit, beginning with contacting an EEO counselor and filing a timely complaint with the agency. *Id.*; *see generally* 29 C.F.R. § 1614. Significantly, an aggrieved party must initiate contact with an EEO counselor within 45 days of the alleged discriminatory conduct (or, in the case of a personnel action, within 45 days of the effective date of the action). *Id.* § 1614.105(a)(1). The 45-day window acts as a statute of limitations, and the failure to consult with an EEO counselor within the required time frame is grounds for dismissing an employee's Title VII claim. *Id.* The regulations provide that such a failure may be excused only where a plaintiff shows (1) that he or she was not notified of the time limits and was not otherwise aware of them; (2) that he or she did not know and could not reasonably have known that the discriminatory action occurred; (3) that despite due diligence, he or she was prevented by circumstances beyond his or her control from timely contacting an EEO officer; or (4) that the deadline should be extended for other reasons the agency deems sufficient. *Id.*

In addition to these regulatory bases for extending the 45-day limit, the Seventh Circuit has recognized that the common law doctrines of equitable tolling and equitable estoppel may also justify exceptions to the deadline. *Gray v. Potter*, 115 Fed. Appx. 891, 893 (7th Cir. 2004) (citing *Johnson v. Runyon*, 47 F.3d 911, 917 (7th Cir. 1995)). Equitable tolling applies where the petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). Equitable estoppel, meanwhile, excuses delay in litigation when the defendant has taken steps to prevent the plaintiff from suing in time. *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000). The elements of equitable estoppel are: (1) the party to be estopped knows the facts; (2) that party intended for his conduct to be acted upon or acted in such a manner that the party asserting estoppel had a right to believe he intended as such; (3) the party asserting estoppel was ignorant of the facts; and (4) the party asserting estoppel reasonably relied on the other's conduct to his substantial injury. *Matamoros v. Grams*, 706 F.3d 783, 793 (7th Cir. 2013) (citing *Portmann v. United States*, 674 F.2d 1155, 1167 (7th Cir. 1982)). In suits against the government, a party invoking equitable estoppel must also establish affirmative misconduct on the part of the government.[10] *Id.* Affirmative misconduct is "more than mere negligence. . . . It requires an affirmative act to misrepresent or mislead." *Gibson v. West,* 201 F.3d 990, 994 (7th Cir. 2000) (internal citations omitted).

The parties agree here that Plaintiff failed to contact the EEO counselor within 45 days as required, but Rodriguez argues that his delay should be excused under a theory of "[e]quitable tolling or estoppel" because Defendant misled him as to the identity of TSA's EEO

---

[10] It is an open question as to whether equitable estoppel is available against the federal government, *Augutis v. United States*, 732 F.3d 749, 755 (7th Cir. 2013) (citing *Solis-Chavez v. Holder*, 662 F.3d 462, 471 (7th Cir. 2011)), but for the purposes of this opinion the court assumes that estoppel is available here.

counselor. (Pl.'s Reply at 5-6.) Plaintiff's explanation of his delay is better suited to an estoppel argument, so the court will focus its analysis on that theory. To support his equitable estoppel theory, Plaintiff contends that he reasonably relied on Defendant's assurances that Bianchi was the EEO counselor who "acted as a screen for all discrimination claims." (*Id.*; Compl. ¶¶ 5, 24.) The dissemination of this inaccurate information, Plaintiff contends, is the affirmative misconduct by TSA that warrants the use of equitable estoppel against the government. (Pl.'s Resp. at 5.) Defendant counters that (1) Rodriguez "could not have relied to his detriment on any 'misinformation' . . . given his ability to reach an EEO counselor 21 days after his formal removal from TSA" (Def.'s Reply at 4-5); and (2) even if he was misled as he claims, the resulting confusion does not explain why he failed to file a hostile work environment complaint with the EEO office prior to May 2012. (*Id.* at 5.)

Neither of Defendant's arguments is persuasive, however. First, the fact that, after retaining counsel, Plaintiff was eventually able to discover the true EEO counselor 21 days after his termination is largely irrelevant to the question of whether he had, up to that point, "relied to his detriment" on the misinformation he claims to have received from TSA. This is particularly true at the pleadings stage, where Plaintiff's allegations are assumed true. Second, although Plaintiff cites evidence of an allegedly hostile work environment dating back to 2009, the most recent incident in the complaint occurred on November 2, 2011, just months before his termination. (Compl. ¶ 21.) Rodriguez further claims that he contacted Bianchi (whom he believed to be the EEO counselor) after every discriminatory incident and did not file a Title VII complaint with the EEO office because he believed his November 2011 complaint was still being screened by her. (Pl.'s Resp. at 5-6.) Taking each of Plaintiff's allegations as true and interpreting them in the light most favorable to Plaintiff, the court is satisfied that Rodriguez's claims are sufficient at the pleading stage to estop TSA from seeking to dismiss his hostile work environment claim as untimely. Accordingly, Plaintiff's delay in contacting his EEO counselor is

excused and Defendant's motion to dismiss is denied as to Rodriguez's harmful work environment claim (Count III).

### B. Retaliation Claim

As discussed above, federal employees must exhaust their administrative remedies before filing suit under Title VII, including for claims of retaliation. *Reynolds*, 737 F.3d at 1099 (citing *Hill*, 352 F.3d at 1145) (dismissing Title VII retaliation claim based on plaintiff's failure to exhaust administrative remedies). Unlike his discrimination and hostile work environment claims, Rodriguez's Title VII retaliation claim was not raised in either his CRCL or MSPB complaints. Thus, Plaintiff has failed to exhaust his administrative remedies as to this claim (Count II), and Defendant's motion to dismiss is granted as to that claim.

### **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss [22] is granted as to Counts I (discrimination) and II (retaliation) of the first amended complaint [21], and denied as to Count III (hostile work environment).

ENTER:

Dated: March 27, 2014

REBECCA R. PALLMEYER
United States District Judge