UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARTIN RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>JEH JOHNSON, Secretary of the United States Department of Homeland Security, Transportation Security Administration,<br><br>Defendant. | No. 12 CV 7838<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

This suit arises under Title VII of the Civil Rights Act of 1964. Plaintiff, a former Transportation Security Administration employee, claims his supervisor discriminated against him on the basis of race by maintaining a hostile work environment. Defendant, the former employer, denies this claim and moves for summary judgment. For the following reasons, defendant's motion is granted.

**I.   Legal Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment

has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II. Background

From 2009 to 2012, plaintiff Martin Rodriguez, who is Hispanic, worked as a security manager with the Transportation Security Administration at O'Hare International Airport. [62] ¶¶ 2, 36. Art Bell, who is white, supervised plaintiff throughout this time. *Id.* ¶¶ 3–4. Plaintiff claims Bell created a work environment that was hostile to him as a Hispanic person, and, in support of this claim, points to a series of incidents that took place over the three years in question.

*Harriet Pease Incident*

In August 2009, plaintiff recommended that an employee named Harriet Pease be terminated after she allowed a traveler, who had set off the metal detector, to leave the area without further screening. *Id.* ¶ 6. When Bell learned of plaintiff's recommendation, he called plaintiff and screamed expletives at him. *Id.* ¶ 7. He yelled things like, "I can't believe you're going to fire this fucking employee." *Id.* ¶ 7. Bell made these comments in front of Pease and someone named Marlene Brunson, who later approached plaintiff, asked if he was okay, and said Bell should not have done that to him. *Id.* ¶ 8. Bell and plaintiff subsequently met near Terminal 3 to talk about the incident. *Id.* ¶ 9. Bell once more yelled at plaintiff, this time in front of passengers as well as employees. *Id.*

Pease was eventually fired for either sleeping on the job or having her back turned to an exit she was supposed to be monitoring. *Id.* ¶ 10. This termination

2

came upon the recommendation of Brunson, who is white. *Id.* Bell immediately agreed with Brunson. *Id.*

*Beverage Incident*

In August or September 2009, plaintiff and a co-worker named Ruben Chacon were walking near Terminal 3. *Id.* ¶ 11. Chacon was holding a drink in his hand. *Id.* Bell approached the two and said to Chacon, "What the fuck is this? You know, that looks like shit. Get that out of your hands. Get that out of your fucking hands." *Id.* Bill Kane, another TSA manager, testified that he has seen employees and managers walking through the terminals with drinks in their hands, but he has never seen anyone be verbally disciplined for it. *Id.* ¶ 12.

*Weekly Meetings*

Managers and supervisors held weekly meetings. *Id.* ¶ 13. Bell would sometimes single out plaintiff and demean him in front of the others. *Id.* It would not happen at every meeting, but it happened enough for the others to take notice. *Id.* Bell would belittle plaintiff by cutting him off, refusing to take his questions, and by asking, "Anybody but Marty have a question?" *Id.*

*"Not Mexican" Incident*

At one such meeting, which took place during Hispanic Heritage Month, Bell looked around to see if anyone was Hispanic. *Id.* ¶ 14. Someone mentioned that plaintiff was Mexican, to which Bell replied, "He's not Mexican. He's white. Look at him. He's not Mexican." *Id.*

3

*"Chappelle Show" Incident*

Around September 2011, a TSA employee named Natasha Petryka discussed a comedy sketch from the "Chappelle Show" that had a white family named "the Niggas" interacting with an African-American milkman played by Dave Chappelle. *Id*. ¶ 15. Another TSA employee, who was African-American, overheard the conversation, including the use of the word "nigga" several times, and was upset by it. *Id*. ¶ 16. Plaintiff told Edith Bianchi (in human resources), Skip Lasaker (a supervisor), Amiel Jackson (plaintiff's immediate supervisor), and Roger Romano (a supervisor) about the incident. *Id*. ¶ 18. Petryka received an informal "counseling" as a result, but not any formal punishment. *Id*.

Petryka was later promoted, after which Bell approached plaintiff upset that he had not been told about the "Chappelle Show" incident. *Id*. ¶ 19. Bell said it was "fucking bullshit" that he hadn't been told, and that "if anybody farts, I hear about it. Here something happened where a girl is using the 'N' word and I turn around and promote her. And I've got a bunch of African-American people that are saying that I'm racist because here I promoted this girl who used this word. Why did I do that?" *Id*.

Relatedly, at least as plaintiff sees it, a person named Alberto Martinez was denied a promotion despite having one of the best scores. *Id*. ¶ 20.

*Ruben Tellado Incident*

After an employee named Ruben Tellado was denied a promotion in November 2011, he filed a complaint with the Equal Employment Opportunity

4

counselor alleging discrimination by Bell. *Id*. ¶ 21. Bell was then questioned by his boss about why Tellado was passed over, and Bell incorrectly stated that Tellado had previously received a formal reprimand. *Id*. Bell later asked plaintiff what sort of discipline Tellado received. *Id*. ¶ 22. When plaintiff told Bell that Tellado had received only an informal "counseling," Bell grew angry, punched the door with his fist, and stated, "I can't fucking believe you guys gave him a counseling." *Id*. Bell went on to complain that Tellado had "filed an EEO against me because I didn't promote him. And I told the EEO investigators that . . . he received formal discipline and that's the reason why I didn't promote him. And now you're making me look like a liar. I can't fucking believe you did this. You know, you should have gotten formal discipline." *Id*. Following this conversation, plaintiff reported Bell's punching of the door and yelling to Roger Romano who was the "workplace violence coordinator." *Id*. ¶ 23.

*Job Selection Incident*

In January 2012, plaintiff was selected as the "risk-based security coordinator" by Bell, Peter Adamson, and Kathy Petrowsky. *Id*. ¶ 27. During a meeting with a number of the managers present, Kevin Bidwell discussed the new position and its importance. *Id*. ¶ 28. Then Bell commented aloud: "Well, if I would have known that this [job] was that important, I wouldn't have picked Marty. I would have picked someone else." *Id*. Bell then started to laugh. *Id*.

5

*Final Performance Review*

Plaintiff's final performance review, for which Bell was the "reviewing official," consisted of ratings of "achieved expectations" for the four performance goals—a rating plaintiff had always scored higher than. *Id.* ¶ 29. Meanwhile, two African-Americans who worked in plaintiff's office both received "exceeded expectations." *Id.* ¶¶ 30–31. Plaintiff complained to Bianchi that he was being unfairly singled out. *Id.*

*EEO Complaints Against Bell*

Bell testified that he has been involved in numerous EEO complaints, because he both promotes and terminates numerous people every year. *Id.* ¶ 35.

*Failed Drug Test and Dismissal*

Plaintiff failed a drug test in 2012 and Bell made a "proposal of removal" as a result. *Id.* ¶ 32. Plaintiff sought to prove that he had not taken any drugs, but Bell would offer him only the opportunity to sign a "Last Chance Agreement," under which plaintiff would have had to admit he was taking drugs, submit himself to substance abuse counseling, and lose his security clearance. *Id.* ¶ 33. Plaintiff was terminated effective March 21, 2012. *Id.* ¶ 36.

*Administrative Appeal, Federal Action, and Settlement*

Plaintiff filed a timely appeal of his termination with the Merit Systems Protection Board, claiming TSA failed to follow its own policies in administering his drug test. [34] at 4. On February 8, 2013, plaintiff and defendant reached a settlement of that appeal. *Id.* Defendant agreed to rescind plaintiff's removal action

6

and to pay him a lump sum, while plaintiff agreed to withdraw his appeal and to "waive[] his right to pursue . . . [a] judicial action in any forum . . . concerning matters relating to his removal action, which is the subject of his MSPB appeal, and any other matters that could have been alleged through the Agreement Effective Date, under the Civil Rights Act . . . ." *Id*. at 5. The agreement also clarified that the waiver was "not intended to waive [plaintiff's] right to pursue other allegations of discrimination in his current lawsuit in federal district court . . . ." *Id*. This carve-out referred to a complaint plaintiff filed mid-appeal with TSA's Office for Civil Rights and Liberties—and later brought to this court—alleging discriminatory termination and a hostile work environment. *Id*. The Office of Civil Rights and Liberties procedurally dismissed plaintiff's discriminatory termination claim on the ground that he had already raised it in front of the MSPB. *Id*. at 6. The agency dismissed the remaining claims—including allegations of verbal abuse, receiving a "less than favorable" performance rating, and being subjected to a follow-up drug test in violation of TSA drug policy—after finding that plaintiff had failed to contact his Equal Employment Officer within 45 days of the discriminatory action. *Id*. When plaintiff subsequently brought these claims to this court, he added a claim for retaliation based on Bell singling him out for unwarranted discipline following plaintiff's complaints. *Id*.

In March 2013, defendant filed a motion to dismiss in this case. *See* [22]. Defendant argued that (1) plaintiff should have brought these claims in his earlier MSPB review, and (2) he failed to otherwise exhaust remedies by not contacting the

7

EEO counselor within 45 days. *Id*. Judge Pallmeyer, who was then presiding, granted the motion in part and denied it in part, holding: (1) plaintiff's claim, that his failed drug test was unfairly used against him due to his race, was required to have been brought in his MSPB appeal because the claim and the appeal relied on the same employment action (i.e., termination for a positive drug test) and were thus related; (2) plaintiff could not pursue the discriminatory termination claim in federal court, because the claim was related to the removal action and thus barred by the parties' settlement agreement; (3) plaintiff failed to exhaust his administrative remedies for his retaliation claim; and (4) plaintiff's hostile work environment claim was not related to his termination. [34] at 9–11, 15.

The court reached this fourth holding by concluding that the hostile work environment claim was based on "(1) several instances of Bell's screaming at [plaintiff] and other Hispanic TSA employees in front of other employees and the general public; and (2) the claim that Hispanics were subjected to disproportionate discipline as compared to their non-Hispanic peers." *Id*. at 11. The court found both sets of allegations to be "wholly unrelated to (and actually predate) plaintiff's initial random drug test in December 2011." *Id*. Because the hostile work environment claim was unrelated to plaintiff's termination, the court held that it did not fall within the jurisdiction of the MSPB and so could not have been raised in plaintiff's appeal. *Id*. Significantly, these findings were precisely what plaintiff argued in his brief opposing the motion to dismiss. *See* [27] at 3–4 ("The MSPB does not have jurisdiction over claims of discrimination that are completely divorced from a

8

personnel action otherwise within its jurisdiction. . . . Plaintiff's hostile work environment allegations date back several years prior to the drug test at issue in the MSPB action. . . . [which plaintiff] pursued . . . to challenge his termination as a result of a false positive drug test."). Accordingly, plaintiff's claims for discriminatory termination and retaliation were dismissed, but his claim for hostile work environment was not.

III. **Analysis**

The sole cause of action remaining in this case is plaintiff's claim that he was subjected to a hostile work environment based on his race, in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq*.). Defendant first argues that summary judgment should be granted in its favor because plaintiff did not complain of the harassment within 45 days of the last alleged incident. A federal employee "must initiate contact with a[n] [Equal Employment Opportunity] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Failure to comply with this requirement results in the employee's claim being barred. *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013). Defendant believes the last incident of alleged harassment took place in January 2012—more than 45 days before plaintiff contacted the EEO counselor—when Bell joked about choosing plaintiff to be the risk-based security coordinator. Plaintiff contends the last incident occurred on February 21, 2012, when, following plaintiff's

failed drug test, Bell proposed plaintiff sign a "Last Chance Agreement" or be removed.

Plaintiff's current position on this point flatly contradicts the position he staked out in opposing the motion to dismiss, where he claimed his "hostile work environment allegations date back several years prior to the drug test at issue in the MSPB action." Had plaintiff relied on his present position back then, Judge Pallmeyer undoubtedly would have found the hostile work environment claim to be related to the removal action, and the court would have held that (1) plaintiff was required to take the claim before the MSPB, and (2) the claim was barred by the parties' settlement agreement. But plaintiff did not present such a theory, and thus was able to survive the motion dismiss.

Plaintiff cannot have it both ways. To the extent the events surrounding his termination are part of the hostile work environment claim, the claim is barred for the two reasons mentioned above. Otherwise, to the extent the January 2012 meeting was the last incident of Bell's alleged harassment, plaintiff failed to complain of the discriminatory conduct within the required 45-day window.

Plaintiff notes that 29 C.F.R. § 1614.105(a)(1) also has a provision concerning situations in which personnel action is taken, with the counselor needing to be contacted within 45 days of the effective date of the action. But this provision does not alter the timeliness of plaintiff's complaint—either the claim is barred for having failed to bring it before the MSPB, or the provision does not apply because a personnel action is not alleged to have been discriminatory.

Plaintiff argues alternatively that defendant should be estopped from arguing failure-to-exhaust because defendant actively misled him into thinking Edith Bianchi was the EEO person to contact. Plaintiff communicated with Bianchi about his complaints, but it did not result in an EEO counselor being notified. "[A] petitioner must satisfy four elements to demonstrate why equitable estoppel should be applied against a party: (1) the party to be estopped knows the facts; (2) that party intended for his conduct to be acted upon or acted in such a manner that the party asserting estoppel had a right to believe he intended as such; (3) the party asserting estoppel was ignorant of the facts; and (4) the party asserting estoppel reasonably relied on the other's conduct to his substantial injury." *Matamoros v. Grams*, 706 F.3d 783, 793 (7th Cir. 2013).

This case does not call for equitable estoppel because plaintiff knew, or should have known, that he was required to contact the TSA Office of Civil Rights and Liberties. The following is undisputed: (1) plaintiff received the TSA Employee Code of Conduct, which contained this information; (2) he received an email containing links to websites containing this information; (3) he attended a training session in September 2011 called "Overview of EEO Harassment and Diversity for Management," which included both this information and the fact that "notifying a supervisor or a TSA office of alleged discrimination is not the same as contacting an EEO counselor"; (4) he completed a training called "Introduction to Civil Rights" twelve times; and (5) posters from the TSA Office of Civil Rights and Liberties about the EEO process and time limits were posted in the employee areas at

11

O'Hare. [60] ¶¶ 35–43. Given plaintiff's regular exposure to the information in question, it cannot be said that "justice and fair play require" application of the doctrine in this case. *Matamoros*, 706 F.3d at 794.

\* \* \*

Even if plaintiff's claim were not procedurally barred, as it is, summary judgment would be appropriate because there is no genuine dispute of material fact and defendant is entitled to judgment as a matter of law. To establish a prima facie case, a plaintiff claiming a hostile work environment must show that (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of his work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability. *See Zayas v. Rockford Memorial Hospital*, 740 F.3d 1154, 1159 (7th Cir. 2014). Under the second prong, "alleged harassment must be sufficiently connected to race before it may reasonably be construed as being motivated by the defendant's hostility to the plaintiff's race." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863–64 (7th Cir. 2005) (internal quotation omitted).

Plaintiff's evidence fails to satisfy the second prong as a matter of law. The only incident arguably connected to race was the meeting in which Bell said plaintiff was white not Mexican. No other incident can reasonably be "construed as being motivated by the defendant's hostility to the plaintiff's race," *Beamon*, 411 F.3d at 863–64, and plaintiff's efforts to characterize them as such, *see* [59] at 12, are unconvincing. For example, it would be too speculative to conclude that Bell's

regular belittling of plaintiff—e.g., "Anybody but Marty have a question?"—came from an anti-Hispanic hostility, merely because plaintiff was the only Hispanic person in the room. *See Beamon*, 411 F.3d at 863 ("While it is true that harassment need not be explicitly racial in order to be probative of a hostile environment . . . it is equally true that not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority."). Similarly, Bell's experiences with Alberto Martinez and Ruben Tellado do not reasonably allow the conclusion that Bell is so anti-Hispanic that every run-in he had with plaintiff must have been connected to race. And although plaintiff notes that two African-Americans who worked in his office both received better reviews than him, plaintiff does not make any showing that these non-Hispanic employees' actual performances were similar to his own in any way. In sum, while Bell's bullying style of management may leave much to be desired, no jury could reasonably conclude that his abrasiveness came from a place of racial animus.

In addition, because plaintiff has presented only one arguably race-based instance of harassment, the evidence also fails to satisfy the third prong. The record lacks "the kind of systematic discriminatory behavior that hostile work environment claims require." *Zayas*, 740 F.3d at 1160; *see also Filipovic v. K & R Express Systems, Inc.*, 176 F.3d 390, 398 (7th Cir. 1999) (four instances of comments over the course of more than a year were insufficient); *Baskerville v. Culligan*

*International Co.*, 50 F.3d 428, 430–31 (7th Cir. 1995) (nine comments over nine months were insufficient).

## IV. Conclusion

Defendant's motion [53] is granted. Enter judgment in favor of defendant, and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: 6/2/15